# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IRA W. BREWER and <br> EUGENIA BREWER <br> <br> V. <br> <br> BANK OF AMERICA, N.A. and U.S. <br> BANK, NATIONAL ASSOCIATION, AS <br> TRUSTEE FOR CERTIFICATE <br> HOLDERS OF THE BEAR STEARNS <br> ARM TRUST MORTGAGE PASS <br> THROUGH CERTIFICATES, SERIES <br> 2004-2, ITS SUCCESSORS AND/OR <br> ASSIGNS | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CASE NO. 4:13-CV-638 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER[1]

Pending before the Court is Defendants' Motion for Summary Judgment (Dkt. #29). The Court, having considered the relevant pleadings, finds that Defendants' Motion for Summary Judgment should be granted.

## BACKGROUND

On or about February 18, 2004, Plaintiffs Ira W. Brewer and Eugenia Brewer obtained a loan from Countrywide Home Loans, Inc. ("Countrywide") to build the property located at 2 Cannonero Circle, Wylie, Texas 75098 (the "Property"). In connection with the loan, Plaintiffs signed a promissory note ("Note") and Deed of Trust pledging the Property as security for payment of the Note. At some point during the relevant time period, Bank of America acquired Countrywide. Thereafter, the Note was endorsed to Defendant U.S. Bank, National Association, as Trustee for the Certificate Holders of the Bear Stearns ARM Trust Mortgage Pass Through Certificates, Series

---

[1] On September 29, 2014, the undersigned entered a report and recommendation in this case as the United States Magistrate Judge to whom this case was referred. This case is now assigned to the undersigned as the United States District Judge, and this memorandum opinion and order is issued accordingly.

2004-2, Its Successors and/or Assigns ("U.S. Bank") and the Deed of Trust was also assigned (the "Assignment") to U.S. Bank on December 13, 2011. Defendant Bank of America, N.A. ("Bank of America") is the loan servicer.

Plaintiffs were never notified of the transfer of the ownership of their loan from Bank of America to U.S. Bank.[2] Plaintiffs made several attempts to find out who owned their loan. Every time Plaintiffs inquired as to who owned their loan, Bank of America told Plaintiffs they could not tell them who owned it. Plaintiffs requested in writing, through their QWR, information as to who owned their loan, but never received a response. Plaintiffs admit that Defendant U.S. Bank is listed as the "current mortgagee" on the Substitute Trustee's Deed, but they never received prior notice that Bank of America transferred ownership of Plaintiffs' Note to U.S. Bank. Plaintiffs assert that they never could ascertain who owned their mortgage loan.

Under the terms of the Note, Plaintiffs were required to make monthly principal and interest payments to U.S. Bank or its successors and assigns. Plaintiffs concede they experienced financial difficulties in June 2009, and, beginning on December 18, 2009, Bank of America sent Plaintiffs various notices of default, each informing them: (1) that the loan was in default; (2) of the amount needed to cure the default; and (3) of a date certain by which to do so in order to avoid acceleration of the loan. Plaintiffs failed to cure the default and have not made a payment on the loan since April 2010.

Plaintiffs sent Bank of America correspondence purporting to represent a Qualified Written Request ("QWR") under RESPA on or about September 7, 2009, requesting "ALL documents

---

[2] Plaintiffs assert that they were never notified of the transfer and Defendants do not contest these assertions with summary judgment evidence that actual notice occurred. Thus, for purposes of this motion, the Court concludes no notice was given.

pertaining to the origination…of the mortgage." Bank of America responded to Plaintiffs' request for documents and their QWR. Plaintiffs assert that they received some, but not all, of the requested information pursuant to their QWR.

Bank of America also reviewed Plaintiffs' loan for a modification or other loss mitigation options in the interim, but Plaintiffs failed to qualify.

Bank of America engaged ReconTrust Company, N.A. ("ReconTrust") to initiate foreclosure proceedings against the Property on U.S. Bank's behalf. ReconTrust sent Plaintiffs a Notice of Substitute Trustee's Sale ("Notice of Sale") on or about October 5, 2012, notifying them that Bank of America was servicing the loan on behalf of U.S. Bank, and that ReconTrust had been retained to conduct a foreclosure of the Property on Bank of America's behalf. ReconTrust also filed the Notice of Sale with the Collin County Clerk. Plaintiffs still failed to cure the default, and U.S. Bank purchased the Property at the November 6, 2012 foreclosure sale. A corresponding Substitute Trustee's Deed ("Trustee's Deed") was issued to U.S. Bank and recorded in the Official Public Records of Collin County, Texas. U.S. Bank is now seeking to take possession of the Property and evict Plaintiffs.

On June 18, 2014, Defendants filed a Motion for Summary Judgment (Dkt. #29). On July 28, 2014, Plaintiffs filed a response (Dkt. #35). On August 5, 2014, Defendants filed a reply (Dkt. #36). On August 15, 2014, Plaintiffs filed a sur-reply (Dkt. #37).

**LEGAL STANDARD**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there

3

is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News*, *Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257.

**DISCUSSION AND ANALYSIS**

Plaintiffs have sued Defendants for the following claims: violations of the (1) Real Estate Settlement Procedures Act ("RESPA"); (2) Texas Debt Collection Act ("TDCA"); (3) Truth in Lending Act ("TILA"); (4) breach of contract; (5) negligence; (6) suit to quiet title/action for trespass

4

to try title; (7) declaratory judgment; (8) injunctive relief; and (9) an accounting of their mortgage loan. Defendants move for summary judgment on all claims. In Plaintiffs' response, they waived their claims related to Defendants' lack of authority to foreclose (i.e., standing), Plaintiffs' claim for violation of RESPA, Plaintiffs' claim for violations of the TDCA, and Plaintiffs' claim for negligence. Thus, Plaintiffs only contest the dismissal of their TILA, breach of contact, trespass to try title and suit to quiet title claims as well asserting a request for a declaratory judgment.

**TILA Claims**

Plaintiffs assert that Defendants violated the TILA by failing to disclose the owner of the loan. Specifically, Plaintiffs assert that they never received notice that Bank of America was transferring ownership of their loan to U.S. Bank, and Defendants violated the TILA by not notifying Plaintiffs of the transfer of their mortgage loan. Defendants move for summary judgment on this claim based upon the statute of limitations and lack of damages.

Defendants first assert that the one-year statute of limitations to bring a TILA claim runs from the date of the transaction, which would be the day the loan closed. Defendants assert that Plaintiffs' loan closed on February 18, 2004, and that there is no basis for tolling the statute of limitations.

Plaintiffs assert that the correct statute of limitations provision for failure to notify the borrower of the transfer of ownership of the loan is one year from the date of the occurrence of the violation. Plaintiffs assert that Defendants have failed to produce any evidence that shows that Plaintiffs received notice of the transferring of the loan to U.S. Bank, or that Plaintiffs were notified of the ownership of their loan. Plaintiffs further assert that assuming *arguendo* that Defendants can produce evidence that Plaintiffs are outside of the statute of limitations, the limitations period may be equitably tolled or otherwise extended. Plaintiffs also assert that they were not able to ascertain

5

when the Note was transferred to U.S. Bank.

"The general statute of limitations for damages claims under the TILA is one year after the violation." *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 186 (S.D. Tex. 2007) (citing 15 U.S.C. § 1640(e)), *aff'd by*, 269 F. App'x 523 (5th Cir. 2008); *Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986).[3] "The violation 'occurs' when the transaction is consummated. Nondisclosure is not a continuing violation for purposes of the statute of limitations." *Moor*, 784 F.2d at 633 (quoting *In re Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984)). "The credit transaction is consummated when 'a contractual relationship is created between [a creditor and consumer].'" *Williams*, 504 F. Supp. 2d at 186 (quoting *Bourgeois v. Haynes Construction Co.*, 728 F.2d 719, 720 (5th Cir. 1984)). To toll the TILA statute of limitations, a plaintiff must "show that the defendant . . . concealed the reprobated conduct and despite the exercise of due diligence, [they] were unable to discover that conduct." *Stevens v. Wells Fargo Bank, N.A.*, No. 4:12–CV–594–A, 2012 WL 5951087, at *5 (N.D. Tex. Nov. 27, 2012) (quoting *Nichamoff v. CitiMortgage, Inc.*, No. H–12–1039, 2012 WL 4388344, at *2 (S.D. Tex. Sept. 25, 2012)).

Defendant assert that the statute of limitations starts to run at the day of the closing of Plaintiffs' loan. Defendants would be correct if there was a complaint regarding the origination of the loan. However, in this case Plaintiffs assert a violation of section 1641(g). It would be ridiculous to assume that a statute of limitations would start running on the date of closing, when the transfer could happen years later. Defendants only move for summary judgment on the basis of the closing of the loan. The Court rejects that basis.

---

[3] *See* 15 U.S.C. § 1640(e) ("any action under this section may be brought in any United States district court ... within one year from the date of the occurrence of the violation").

The correct statute of limitations provision for failure to notify the borrower of the transfer of ownership of the loan is one year from the date of the occurrence of the violation, which for the violation being alleged would be the date of the transfer of the loan. In this case, it appears that the transfer occurred on December 13, 2011. Defendants offer no evidence that shows that Plaintiffs received notice of the transferring of the loan to U.S. Bank, or that Plaintiffs were notified of the ownership of their loan.

Defendants assert in their reply, for the first time, that the claim is still barred by the statute of limitations because the Assignment of Deed of Trust to U.S. Bank was filed of record on December 15, 2011. Defendants argue that for purposes of failure of notice, the violation occurred on or about December 16, 2011, in which case the statute of limitations expired on December 16, 2012. Defendants further allege that Plaintiffs did not file their lawsuit until October 1, 2013, and have not set forth any reason for tolling the statute of limitations.

Plaintiffs did not file this lawsuit within the one-year period after the alleged violation. Thus, the question is whether Plaintiffs present a material fact issue regarding equitable tolling. Defendants' motion merely asserts that Plaintiffs' complaint fails to set forth any reason to toll the statute of limitations. In their response, Plaintiffs assert that they pleaded in their complaint that they requested information multiple times about who owned their loan, but never received a response. Defendants respond that Plaintiffs could have easily discovered the owner of the loan with a minimum degree of due diligence because the assignment was part of the public record. Plaintiffs respond that due diligence does not require a borrower to look through county records to determine who owns their loan, and Defendants have not cited to any case law to support their contention.

A plaintiff seeking equitable tolling must allege specific facts explaining the failure to learn the basis for the claim within the statutory period. A plaintiff cannot simply rely on the same factual allegations to both show a violation of the federal statute and to toll the limitations period of that statute. Equitable tolling applies when there is an "excusable delay" by a plaintiff. Equitable tolling is permissible only under "rare and exceptional" circumstances. *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). "Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996). "[I]gnorance of the law or of statute of limitations is insufficient to warrant tolling." *Felder v. Johnson*, 204 F.3d 168, 172 (5th Cir. 2000).

In this case, the alleged failure to disclose the assignment occurred in December 2011; however, Plaintiffs did not file their complaint until October 2013, which is well outside the one-year deadline. Plaintiffs argue that equitable tolling applies, which saves their TILA claim. Plaintiffs contend that they were unaware of the transfer because they never received a copy of the assignment as required by TILA, they asked for information about the new owner and never received a response, and they are not required to check the county records. The Court finds that equitable tolling is the exception and not the general rule. If the Court would allow tolling every time a plaintiff alleges improper disclosure, it would render the TILA limitations period completely meritless. Plaintiffs were required to submit more evidence than they have given the Court to support tolling. The Court cannot find that Plaintiffs were reasonably diligent when they never checked the county records.

Even if the Court found that Defendants' summary judgment motion should be denied with regard to the statute of limitations, the Court finds that Plaintiffs have failed to raise a material fact

issue of actual damages.

When a lender is found to have violated TILA, a plaintiff in a private action is entitled to recover from the lender "any actual damage sustained by such person as a result of the failure." 15 U.S.C. 1640(a)(1); *see also Perrone v. Gen. Motors Acceptance Corp.*, 232 F.3d 433, 435 (5th Cir. 2000).

Defendants assert that Plaintiffs' complaint does not allege facts to show Plaintiffs relied on any representations by Defendants or any failure to disclose; nor does it allege facts to support that Plaintiffs were harmed by any alleged failure to disclose. Defendants argue that Plaintiffs' Property was foreclosed because they failed to make their mortgage payments, and not based on any conduct or failure by Defendants to send a notice of the assignment. Plaintiffs counter that they have lost title to the home they have lived in for twelve years and due to Defendants' negative credit reporting, their credit score is lower resulting in Plaintiffs having to pay a higher interest rate in order to lease a vehicle. Plaintiff also assert that they received an interest rate of 22.9% on their credit card. Plaintiffs also argue that have also lost valuable time dealing with Bank of America and have incurred attorneys' fees and expenses in the amount of $44,960.54

The Court agrees with Defendants that all of these alleged damages are a result of the foreclosure and Plaintiffs have failed to submit any evidence to demonstrate that the alleged damages were due to Defendants' failure to notify them of a transfer in ownership of the loan. Plaintiffs never respond to this argument that the lack of notice of the assignment damaged them in any way. Plaintiffs were aware and were dealing with Bank of America, the servicer of the loan.

**Breach of Contract Claim**

Plaintiffs' breach of contract claim as pleaded contends Defendants breached the Deed of

Trust "[b]ecause there is no evidence that U.S. Bank, N.A. ever owned the Note or was transferred the note…" and, therefore the foreclosure and subsequent eviction proceedings are invalid. Plaintiffs also pleaded that the Assignment is ineffective and state that Defendants' violation of RESPA and TILA also constitutes breach of the Deed of Trust. In their response, however, Plaintiffs assert that Defendants breached the Deed of Trust by subjecting Plaintiffs' loan to excessive charges, including over-charging for photo and inspection fees. Plaintiffs have abandoned their claims regarding lack of authority and their RESPA claim, and the only remaining bases for the breach of contract claim are Defendants' alleged breach of the Deed of Trust and alleged violation of TILA.[4]

Defendants assert that Plaintiffs' allegations in their response that Defendants' assessed "excessive loan charges" and inspection fees will not support Plaintiffs' breach of contract claim because such allegations are beyond the scope of Plaintiffs' First Amended Complaint. The Court agrees with Defendants that Plaintiffs cannot assert new claims in a response to a motion for summary judgment. *Criner v. Texas—New Mexico Power Co.*, 470 F. App'x 364, 371 (5th Cir. 2012); *Jefferson v. Christus St. Joseph Hosp.*, 374 F. App'x 485, 492 (5th Cir. 2010). "A claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005); *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990); *Higbie v. Kerry*, No. 3:11–CV–2636–L, 2013 WL 4603248, at *3 (N.D. Tex. Aug. 29, 2013). Plaintiffs never asserted a claim for breach of contract based upon "excessive loan charges" and inspection fees in their First Amended Complaint. Therefore, the Court considers these claims

---

[4] Since the Court has found that there is no basis for a TILA claim, Plaintiffs cannot use these allegations as a basis for a breach of contract claim.

waived and will not consider them. Summary judgment should be granted on these claims.

**Suit to Quiet Title and Trespass to Try Title**

"To prevail in a trespass-to-try-title action, Plaintiffs must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004) (citation omitted). "The pleading rules are detailed and formal, and require a plaintiff to prevail on the superiority of his title, not on the weakness of a defendant's title." *Id.* (citation omitted).

A suit to quiet title is an equitable remedy to clarify ownership by removing clouds on the title. *See Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007). To establish a claim for suit to quiet title, a plaintiff must show the following: (1) an interest in specific property; (2) that title to the property is affected by a claim by the defendant; and (3) that the claim, although facially valid, is invalid or unenforceable. *Sadler v. Duvall*, 815 S.W.2d 285, 293, n.2 (Tex. App.–Texarkana 1991, pet. denied). An adverse claim, to constitute a cloud on the title removable by the court, must be one that is valid on its face but is proved by extrinsic evidence to be invalid or unenforceable. *Id.*

Plaintiffs also bring a suit to quiet title and/or action for trespass to try title on the premise that they are the rightful owners of the Property because the foreclosure was improper.

Plaintiffs have failed to produce summary judgment evidence of their superiority of title. It is undisputed that the Property was purchased at a foreclosure sale. Plaintiffs have offered no summary judgment evidence that there was a defect in the foreclosure proceedings. When Plaintiffs defaulted on the Note, causing Defendants to foreclose on the Property, Plaintiffs lost any interest they could claim in the Property, and Plaintiffs have no evidence to establish they have an interest

in the Property. Defendants' interest in the Property was valid and enforceable. The Court has already rejected Plaintiffs' other claims. Since Plaintiffs have abandoned their allegation that Defendants lacked authority to foreclose, the only bases for these claims are alleged violations of TILA and the TDCA. Plaintiffs have conceded their TDCA claims, and the Court has found that their TILA claim fails as a matter of law. Although Plaintiffs contend they have superior title to the Property because the foreclosure is void, they fail to identify any defect in the foreclosure proceeding which would render the sale void. Thus, Plaintiffs have no basis for an action based upon trespass to try title or quiet title.

**Declaratory and Other Equitable Relief**

Defendants also moves for summary judgment on Plaintiffs' claims for declaratory relief. The federal Declaratory Judgment Act states, "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Federal courts have broad discretion to grant or refuse declaratory judgment. *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The Declaratory Judgment Act is "an authorization, not a command." *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). It gives federal courts the competence to declare rights, but does not impose a duty to do so. *Id.*

The Declaratory Judgment Act is a procedural device that creates no substantive rights, and requires the existence of a justiciable controversy. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227,

239-241 (1937); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1179 (5th Cir. 1984). Thus, the Act provides no relief unless there is a justiciable controversy between the parties. The Fifth Circuit stated as follows:

> In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future. Based on the facts alleged, there must be a substantial and continuing controversy between two adverse parties. The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury.
> Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects. To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future. Similar reasoning has been applied to suits for declaratory judgments.

*Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (citations and quotations omitted).

At the present time, there is no actual controversy between the parties that would allow for declaratory relief, and this claim should be denied. Furthermore, Plaintiffs are not entitled to equitable remedies, including an accounting and injunctive relief, because they have no viable cause of action.

## CONCLUSION

It is therefore ORDERED that Defendants' Motion for Final Summary Judgment (Dkt. #29) is hereby **GRANTED** and Plaintiffs' case be DISMISSED with prejudice.

**SIGNED this 7th day of January, 2015.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE